# PRACTICE REPORTS.

## SUPREME COURT.

### JULIUS C. SAGE agt. ANTHONY C. HARPENDING.

The statute of 1849, in reference to appeals from proceedings before a justice of the peace to the county court, in *summary proceedings*, providing for a *stay of the issuing of a warrant*, pending the appeal, does not apply to proceedings instituted against a tenant solely on the ground that he is *holding over after the expiration of his term*. It is otherwise as to proceedings against the tenant in the other three classes of cases mentioned in the Revised Statutes.

The *appeal of itself* in such case, does not stay the power of the justice to issue the warrant against the tenant to enforce his judgment.

The fact that an appeal has been taken to another court, does not affect the *conclusive nature of the judgment as a bar*, while it remains unreversed.

Where the landlord, the owner in fee of the demised premises, claims that the term of the tenant has expired, enters without process and without force, during the temporary absence of the tenant, he is justified in using so much force as is necessary to defend himself and maintain his possession of the premises.

*Seventh District General Term, June,* 1867.

J. C. SMITH, E. DARWIN SMITH *and* JOHNSON, *Justices.*

ACTION for assault and battery.

Defense, 1. A general denial. 2. That at the time of the alleged assault, the defendant was the owner and in possession of certain real estate, consisting of a store in the town of Starkey, Yates county, and the alleged assault was committed in defense of his possession, and to prevent great bodily harm being done him by the plaintiff, who with the assistance of divers persons armed with axes, &c., wrongfully entered to expel the defendant. 3. *Son assault demesne.*

On the trial at the Yates circuit, in March, 1866, the following facts were proved : The defendant, Harpending, was the owner of a block of buildings in the village of Dundee, known as Harpending's block. On the 7th April, 1865, and for about two years next preceding that date, Sage, the plain-

VOL. XXXIV. 1

tiff, was in possession of certain rooms in said block, as tenant of the defendant, under a lease. On the 7th April, 1865, Harpending instituted summary proceedings before a justice of the peace, under the statute, to remove Sage, on the ground that he was holding over after the expiration of his term, without the permission of his landlord; alleging that the term of the .ease expired on the 1st April, 1865.

Sage appeared in the proceedings, and made an affidavit admitting his tenancy, and his occupation of the premises, but denying that his term had expired, and alleging that by the terms of the agreement between him and Harpending, his term would not expire till the 1st April, 1866.

The issue thus joined, was tried before the justice on the 13th April, 1865, who on the same day gave judgment in favor of Harpending, for the immediate possession of the premises, and his costs.

On the same day, and before a warrant was issued, Sage perfected an appeal from said judgment to the Yates county court, and on such appeal put in an undertaking, executed by a sufficient surety, conditioned, as required by law, to make such appeal effectual, and also conditioned that the tenant would pay all rent accruing or to accrue upon the premises described in the landlord's affidavit in said proceedings, subsequent to the application made by said landlord to the justice to remove the tenant.

After the appeal was perfected and the undertaking was put in, and on the 15th April, 1865, the justice, at the request of Harpending, issued his warrant of dispossession against Sage. After the appeal, and before the issuing of the warrant, it had become a question of discussion between the counsel of the respective parties, in the presence of Harpending, whether the justice had any right to issue his warrant after the appeal was perfected and the undertaking was put in.

On Saturday, the 15th April, about five o'clock in the afternoon, while Sage was absent, the sheriff, with the warrant, and without force or violence, put Harpending into the

possession of the premises, with the understanding that Sage's personal property was to remain there undisturbed until Monday morning, at nine o'clock.

As soon as Harpending got possession, he fastened the building securely, so that no one could enter it without breaking in, and on Sunday he commenced taking down partitions erected by Sage. On that day Sage went to the building and called upon Harpending to open the door, but he refused. Sage then broke into the building through a window sash. Other persons acted in concert with him, one of whom used an axe to effect an entrance.

The testimony tended to show that while Sage was at the window, Harpending showed him a pistol, and told him he must not come in, and that as soon as Sage broke through the window, he went towards Harpending as fast as he could. When he was about five feet from Harpending, the latter fired upon him with the pistol, and hit him in his left breast. Sage was protected by his· clothing and the contents of his vest pocket, so that the skin was not broken, but he received a bruise upon the breast. As soon as the pistol was fired, Sage sprang upon Harpending, and took hold of him. Harpending struck Sage on the head with the pistol, and drew blood, but soon after the pistol was taken from him, and, as the testimony tended to show, he was overpowered and compelled to surrender the possession of the premises to Sage.

The action was brought for the personal injury sustained by Sage, and he recovered a verdict for $300.

On the trial, the judge ruled that unless the defendant could show that the warrant was legally issued, upon a proper judgment, and proceedings had for the purpose of dispossessing the plaintiff, the defendant was not·justified in holding possession of the premises.

He also ruled that the appeal removed the proceedings from the justice to the county court, and the justice had no right to issue the warrant after the notice of the appeal was served on him, and that the warrant was void.

He also charged the jury that the appeal and bond given, and the proceedings had by the plaintiff, operated as a stay of proceedings, so that the justice had no right to issue the warrant; that the warrant was void, and that the defendant was not rightfully in possession.

He also charged that the defendant was a trespasser in taking possession of the building, and the plaintiff had a legal right to break into the building, and the defendant was guilty of a wrong in resisting the plaintiff in getting in.

The counsel for the defendant excepted to these several rulings, and requested the judge to charge the jury that if the defendant had possession in fact, he was justified in using violence, if necessary, to defend his possession. The court declined so to charge, but charged that the defendant was a mere trespasser, who had but recently entered, and the plaintiff had the right, if compelled to do so, to use force to eject the defendant.

The defendant's counsel also requested the court to charge that the judgment before the justice between the parties was *res adjudicata*, and settled the rights of the parties, and that the plaintiff was holding over his term, but the court declined, and charged that the judgment ceased to be *res adjudicata* after the appeal was perfected with the security.

The defendant's counsel also requested the court to charge that the plaintiff cannot recover in this action, except on the ground that excessive violence was used by the defendant in defending his possession; but the court declined, and charged that it was not so in this case.

The defendant's counsel also requested the court to charge that from the undisputed facts of the case, the plaintiff is not entitled to recover against the defendant, for the reason that all the force he used was insufficient to maintain his possession, but he was overpowered and compelled to surrender the same; but the court declined so to charge, or to charge on that point otherwise than he had already done.

The counsel for the defendant excepted to the several

refusals to charge, and the several instructions above stated, and the court ordered a stay of proceedings on the verdict, and that the exceptions be heard at the general term in the first instance.

CHARLES S. BAKER, *for defendant.*

I. The court erred in declining to hold and rule as requested by the defendant, that the defendant was in possession under color of title and authority, and under the warrant, and the plaintiff had no right to forcibly eject him, or retake the possession of the premises from the defendant. There being a dispute between the parties, the defendant claimed to be the owner, and the plaintiff's time for which he had leased them had expired, and he having, without force, obtained possession of them, and the plaintiff, although claiming that his term for which he had leased the premises had not yet expired, and also that the bond, appeal and proceedings, stayed proceedings: Yet he would not be justified in using force to obtain the possession of the premises, and the defendant had a right to use sufficient force to keep possession of the same. And the exception taken thereto is well founded.

(*a.*) In one aspect of the case, this proposition involves the right of the plaintiff's recovery therein. There can be no dispute about the facts embraced within it, and the court is only called upon to fix the rule of law applicable thereto.

(*b.*) We confidently hope that we shall be able to convince the court of the correctness of the proposition. And it is, we believe, due to the learned justice, before whom this cause was tried, to state here, that he entertained serious doubts of the correctness of the rule laid down by him.

(1.) The defendant was the owner of the building, and in the actual occupancy and possession thereof, and claimed the right to hold the same as such owner, because the plaintiff's term of tenancy had expired. The plaintiff claimed his term had not expired. The only dispute that existed, was as to who had the right of possession. Apparently, and in fact, if the plaintiff's term had expired, the defendant, at the time of the alleged assault, was clothed with an absolute and complete title. He was the owner of the fee which carries with it the right of property, and in the actual occupancy and possession of the premises, which three matters establish a perfect title. (*Kent's Com. 5th ed. vol.* 4, *p.* 372.)

(2.) The defendant having thus proved himself in possession of his own premises, the question was fairly presented, whether he had the right, or would be justified in using force to maintain and defend possession of his property against the plaintiff, who claimed simply a right to the possession thereof under a lease, which the defendant claimed had expired. The court held that to entitle the defendant to defend his possession, he must go further and show that he was in possession, under legal process, issued upon a proper judgment and proceedings had for that purpose.

(3.) The court, by its rulings, made the defendant's right to hold his property to depend entirely upon his manner of getting possession thereof, which we confidently submit was entirely immaterial, only so far as to prove that actual violence or force was not used towards the plaintiff or persons representing him. How the defendant got into possession of his property, was entirely immaterial so far as this action is concerned, with the qualification that he did not use force or violence towards the plaintiff in so doing.

(4.) The court, by its ruling, changed the *onus* of proof, by compelling the defend-

ant to show that in the taking of the possession of his property, he took it under valid process, &c. It ought not to be the law, that I being in the possession of my own property, can be compelled to show *how* I came by it, as against any person who shall, with force and violence, undertake to eject me therefrom, claiming that he has a right to such possession.

The rule is well settled, that if the plaintiff had brought an action of trespass for a forcible entry, even, on the part of the defendant, he could not have maintained the action, and it is entirely immaterial how possession is obtained. (*Sampson* agt. *Henry*, 13 *Pickering*, 36; *Grenville* agt. *College of Physicians*, 12 *Modern Rep.* 386, *Opin.* HOLT, *Ch. J.* 387; *Crowther* agt. *Ramsbottom*, 7 *Term*, 654, *Lord* KENYON, *Ch. J.* 657, 658; *Opin.* LAWRENCE, *J.* 658; *Hyatt* agt. *Wood*, 4 *Johns.* 150.)

In the case of *Sampson* agt. *Henry*, the court held that it was entirely immaterial how or for what purpose the defendant entered the premises.

(5.) But it is not necessary to discuss the question last presented, as it will be examined in another branch of our argument. It is sufficient that the question raised will not necessarily have to be examined by the court, as the rule of law applicable to the facts of this case is such that in no event is the plaintiff entitled to recover.

(6.) Conceding everything to the plaintiff, it will not be questioned that there was a dispute about the facts in regard to who was rightfully entitled to the possession of the premises, and that the plaintiff was actually in possession thereof, claiming the right to hold them as the owner; alleging the defendant's lease had expired. It is perfectly clear, both upon principle and authority, that the plaintiff had no right under such circumstances, to undertake by force and violence to oust the defendant from the possession of his property, and the defendant would be justified in using sufficient force to prevent it. (*Parsons* agt. *Brown*, 15 *Barb. S. C.* 590; *Jackson* agt. *Stansberry*, 9 *Wend.* 201; *Opin.* NELSON, *J.* 202; 3 *Black. Com.* 4, 5, 179; *Newkirk* agt. *Sabler*, 9 *Barb. S. C.* 652; *Opin.* PARKER, *J.* 656; *Sampson* agt. *Henry*, 11 *Pickering*, 379; *Opin.* WILDE, *J.* 387.)

(7.) The case of *Parsons* agt. *Brown*, is *stare decisis* in this court. The only difference in the facts of the case are: 1st. The parties to the action are reversed. 2d. That the plaintiff, *Parsons*, claiming he was the owner, entered without process during the temporary absence of the tenant *Brown*, the defendant, and fastened up the premises, refusing the defendant admission, claiming he was not entitled thereto. The defendant, after demanding possession, undertook by force to obtain it, and the plaintiff resisted. The court held the plaintiff had a right to thus resist, and he recovered a judgment against *Brown*, the tenant, for $500 damages.

The judge it is believed charged the exact converse of the rule laid down in that case.

*Sub.* 1. The court erred in refusing to charge the jury as requested, and the exceptions thereto are well taken. The court also erred in its charge to the jury, and the exceptions are well founded. The court also erred in refusing to charge as requested. And the exceptions thereto must be sustained.

(*a.*) It will be proper to examine the matters in their inverse order. As to the request and refusal to charge: 1st. That the judgment of the justice being *res adjudicata*, that the plaintiff was holding over after the expiration of his term.

(1.) This depends upon the construction to be given to the statute. (3 *R. S. 5th ed.* § 52, *p.* 840.) And for the sake of the argument, we will admit what was claimed by the counsel in the court below. That upon the perfecting of the appeal in the court below, with security, it stayed proceedings as to issuing the warrant. But by the express language of the statute, it had no other effect. The conclusiveness of the judgment as to the rights of the parties under the lease, and that the plaintiff's term had expired, and he was holding over his term without permission, was adjudicated

upon, and settled between the parties. The express language of the statute is: "The proceedings before such justice may be removed by appeal to the county court of the county, in the same manner and with the like effect, and upon like security as appeals from the judgment of justices of the peace in civil actions, &c." In order to stay issuing of warrant, further security to be given to pay rent, &c.

(2.) It is only necessary for the court to examine what would have been the effect of an appeal from the judgment of a justice in a civil action, where the question was to be argued before the county court upon questions of law, upon the conclusiveness of such judgment, before affirmance or reversal, to see what was the effect of the judgment here upon the rights of the parties. For by express provision of the statute, the appeal was to have the like effect.

(3.) That in such cases, the appeal does not in any manner affect the conclusiveness of the judgment as between the parties, is so plain and well understood, that no argument is necessary to establish it. (*Harris* agt. *Hammond*, 18 *How. Pr. R.* 623 ; *Opin.* STRONG, *J.* 124 ; *Pruyn & Billis* agt. *Tyler, Id. Opin.* GOULD, *J.* 334 ; *Tyler* agt. *Willis*, 35 *Barb. S. C.* 213 ; *Opin.* LEONARD, *J.* 214.)

(4.) A judment rendered in summary proceedings, until reversed, is as conclusive as any other. (*White* agt. *Coatsworth*, 2 *Seld.* 137 ; *Hyatt* agt. *Bates*, 35 *Barb. S. C.* 308.)

(*a.*) The judgment of the justice being *res adjudicata*, upon the question of the plaintiff's holding over his term, brings us to the consideration of the charge and exception thereto. That the defendant was a trespasser in taking possession of the building, &c.

(1.) We have heretofore endeavored to show that the defendant, as against the plaintiff, was in the lawful possession of the premises. It will be seen by the charge of the court, the jury were instructed that the warrant to put the defendant into possession was void, being issued after the appeal was perfected, with security, and by reason thereof, the defendant in taking possession of his property under it was a mere intruder or trespasser, having no right thereto as against the plaintiff. In other words, he made the defendant's rights in the matter entirely to depend upon the power of the justice to issue, and the validity of the warrant whereby the defendant got into possession of his building. We submit this is not true upon principle or authority.

(2.) The defendant's right to the possession of his property, did not solely depend upon the proceedings instituted before the justice, and the subsequent issuing of the warrant, and the defendant's receiving possession under the same. His rights in the matter depended as much, if not more, upon the question whether or not the plaintiff's term had expired for which he had leased the premises. This fact had been in dispute, and adjudicated against him. This being the case, the defendant, being the owner of the premises, could, without any proceedings whatever of a judicial nature, have taken possession of his building, and even if he had used force and violence in so doing towards the plaintiff, he could not have maintained an action of trespass against the defendant, for the forcible entry. Although in such case, even the defendant would not be justified in committing an assault and battery on the plaintiff in order to regain possession. (*Hyatt* agt. *Wood*, 4 *Johns.* 150; *Opin.* SPENCER, *J.* 160 ; *Jackson* agt. *Stansberry*, 9 *Wend.* 201, 202, 203; 3 *Black. Com.* 4, 5, 174, 179 ; *Turner* agt. *Maymott*, 1 *Bingham's R.* 158, 280 ; 7 *Term R.* 431, 432; 6 *Taunton*, 202 ; *Sampson* agt. *Henry*, 13 *Pickering*, 36 ; *Opin.* WILDE, *J.* 39.)

In the case of *Turner* agt. *Maymott* (*supra*), the defendant took possession by force, and kept the plaintiff's property in his possession, without removing it from the premises. He would also be liable for forcible entry and detainer. (*See same cases.*)

(3.) But this right which is given by law to the defendant, the owner, is a very

different one from that claimed by the plaintiff, and allowed to him by the court on the trial. To justify a party in taking possession of real property by force and violence, he must in any case have the title. He must have not only a right of possession, but a right of property therein absolute and beyond dispute. I do not believe a case can be found, where it is held that a person not holding the title, but a *mere right of possession,* has ever been allowed to enforce such right of possession by force and violence against a party in actual possession, and especially would it be true where the facts in regard to such rights were in dispute, and the party in possession was the owner of the premises. In such a case, a party, the plaintiff here, was bound to resort to his action. (3 *Black. Com.* 4, 5, 174 to 180, *sub.* 2, 179.)

The reason of the rule is apparent; a party merely entitled to a right of possession, where such possession is displaced by another claiming a right thereto, the case is balanced, and the court cannot determine where the actual right is; and, therefore, the action must be brought. The same rule applies to recaption of personal property. (*Newkirk* agt. *Sabler,* 9 *Barb. S. C.* opin. PARKER, J. 656; *Sampson* agt. *Henry,* 11 *Pickering, opin.* WILDE, J. *pp.* 387, 388.)

(4.) The case for the defendant here, is stronger than those cited. He was the owner of the premises, and got into the possession peaceably. If he got into possession by a proceeding which was void, or without any proceeding whatever, yet he was not an intruder or tresspasser, unless the plaintiff had a better title and right to the possession of the premises than the defendant had. The plaintiff did not prove, or offer so to do, that he had any better right.

*Sub.* 2. These views lead us to the consideration of the requests to charge the refusal of the court, and the exceptions thereto.

(1.) If we were right that the judgment of the justice was *res adjudicata* upon the question of the plaintiff's holding over after the expiration of his term, then the defendant was rightfully in possession of his property, and was not an intruder or trespasser. (*See cases cited, sub.* 1, *points* 1, 2.)

(2.) It was not material in this case which party had the right to the possession of the building. This is in exact accordance with the judgment of this court in *Parsons* agt. *Brown* )15 *Barb. S. C.* 590, *opin.* WELLES, J. 593, *and the other cases cited.*) And the other requests were precisely in accordance with the judgment pronounced in that case, and unless it is to be overruled, the exceptions taken to the refusal of the court to charge, as requested, must be sustained.

(3.) In the first instance all the proof the defendant gave that he was entitled to the possession of the building, was that he had been in possession of the rooms for two years. He did not claim to have any title thereto, as owner or otherwise, and until the court by its rulings, compelled the defendant to show proceedings instituted to remove Sage, was it disclosed what was the foundation of the plaintiff's claim? The whole case shows there was no dispute about the title, and that the defendant was the owner of the premises. The only dispute was about the right to the possession, each party claiming such right. Unless the proceedings before, and the judgment rendered by the justice, are binding upon the parties, there is not a *scintilla* of evidence to show which had the right to the possession of the building, by virtue of the lease. The court held the judgment and proceedings were not binding The parties were, therefore, left in exactly the same situation as if the proceedings had not been instituted. The plaintiff claiming a right to the possession on account of a prior possession, or claiming the right as tenant, whose term had not expired. The defendant, his landlord, claiming as the owner, and that the plaintiff's term had expired, and he was holding over. Under this state of facts, the defendant, in the absence of the plaintiff, took possession of the premises peaceably, without any process, or with process that was of no legal force or validity. After getting into actual

Sage agt. Harpending.

possession, however, he fastens it up securely, re-rents a portion, remains there in person and refuses to surrender up his possession, claiming that by authority of law he has a right to hold it against a party who merely claims a simple right of possession, existing by virtue of a tenancy or prior occupation, and such party undertakes to reduce his claim by force and violence to actual possession. The owner and party in possession, opposes such force and violence, with like force and violence, and in so doing, and in defending his property and possession, injures the party attempting to deprive him of his property and possession. Yet notwithstanding all the force he uses, he is not able to maintain possession of his property. That a party under such circumstances is justified in repelling force by force, and not liable, is too clear for argument.

(4.) Either view the plaintiff may take, upon principle, and within the cases cited, the plaintiff is not entitled to maintain this action. 1st. If the plaintiff's term had in fact expired, the defendant was justified in taking possession without process. 2d. And when the defendant showed he was the owner of the premises, having the title thereto, it would give him the right to the possession, until the plaintiff could show a better title. And unless he did, he was not authorized in any event to use force to divest the defendant of his possession, and not then, if there was a reasonable dispute between the parties as regarded such right.

(5.) The rule of law as laid down by the learned justice in his charge to the jury, is only applicable to a case where a mere stranger or intruder, *i. e.*, a person having or making no claim of right to the property, or the possession thereof whatever, should enter into the possession of another without his permission, which is certainly not the case here. The claim here was certainly under color of title, and honestly believed.

II. The court should have charged the jury as requested, that from the undisputed facts of this case, the plaintiff is not entitled to recover against the defendant, for the reason that by using all the force he did, it was insufficient to maintain his possession, but he was overpowered and compelled to surrender the same, and the exceptions thereto are well taken.

(1.) This would follow as a matter of course if we were right in our views in point I. (*Newkirk* agt. *Sabler*, 9 *Barb.* 652; *Opin.* PARKER, *J.* 657.)

III. The court erred in holding the warrant void. And in their charge to the jury, holding that the defendant was not rightfully in possession of the building; also that the appeal and bond given, and the proceedings had by the plaintiff, operated as a stay of proceedings, so that the justice had no right to issue the warrant to put the defendant into possession of the building; also that the warrant afforded the defendant no protection; and also that the warrant was entirely void, and the exceptions thereto are well taken.

(1.) To arrive at a correct conclusion on the matters embraced within the charge, it becomes necessary to examine carefully the provisions of the statutes in relation to summary proceedings.

The first is section 28, 3 Revised Statutes, 5th edition, page 836, declaring what officers to have jurisdiction:

*Sub.* 1. Where tenant holds over—this case. 2. Making default in payment of rent. 3. Tenant an insolvent. 4. Land sold on execution. This last subdivision added, laws of 1849, chapter 193, section 1. Sections 29 to 39, declare the manner of proceeding. Section 39 as amended in 1857 (*chap.* 684, § 3, *Laws* 1857), declares: "If the decision of the magistrate or the verdict of the jury is in favor of the landlord, then warrant to issue." The amendment of 1857 inserted "verdict of the jury." This same statute gave right of trial by jury, provided demand made. (*See same chap. Laws* 1857, § 2.) Section 40 declares how the warrant is to be executed. Section 43 declares the effect of the issuing of the warrant. Section 44 provides for stay-

Sage agt. Harpending.

ing issuing of warrant in case of proceeding for the non-payment of rent. Section 45 provides for staying issuing of warrant, when the application is founded on fact, that the tenant or lessee has taken the benefit of any insolvent act, &c. Section 46 provides for staying the warrant when the application is founded upon an alleged sale by execution, &c. Section 47 provides *certiorari* may issue to examine adjudications made, &c., but expressly provides that the proceedings shall not be stayed or suspended by such writ of *certiorari*, or any other writ or order of any court or officer. Sections 48, 49, 50, 51, provide for award of restitution to tenant, in case he succeeds, recovery of costs by prevailing party, rights of landlord not impaired in other cases, and manner of entry of judgment. Section 52 reads as follows: " The proceedings before such justice may be removed by appeal to the county court, in the same manner, and with the like effect, and upon like security as appeals from the judgment of justices of the peace in civil actions, except that the decision of such county judge shall be in affirmance or reversal of such judgment, and be final. But in addition to the security for such judgment, as required by law in case of such appeal, in order to stay the issuing of such warrant or execution, there shall, in case of appeal by the tenant, be security also given for the payment of all rent accruing or to accrue upon said premises, subsequent to the said application to such justice."

Upon the construction of this section hinges the right of the justice to issue the warrant in this case.

(2.) To arrive at a proper construction which should be given to it, it is first necessary to inquire the intention of the legislature. The object in view is apparent at a glance, viz: To simplify the practice, and conform as near as possible to the change made on the adoption of the Code of Procedure. And they gave the county court power to hear and determine the appeal, the same as appeals from judgments in civil actions. It may be asked, if the statute was only enacted to give parties the benefit of an appeal, why insert the matter in relation to staying the issuing of the warrant?

(*a.*) It will be seen by reference to the various sections, that only three cases were provided for where the warrant could be stayed, viz: *Non-payment of rent, insolvency, sale on execution.* (§§ 44, 45, 46.) Where proceedings were instituted on the ground the tenant was holding over after the expiration of his term, the issuing of the warrant was never stayed.

(*b.*) It will be perceived that the tenant was bound to pay the costs and the rent immediately, or give security they would be paid within ten days, in cases for non-payment of rent, to stay issuing of warrant, but no provision would be made for rent which would subsequently accrue, and unless the appeal was heard and determined before the next payment of rent became due, new proceedings would have to be instituted in case of default to pay. In the case where the lessee had taken the benefit of an insolvent act, &c., the warrant was to be stayed on payment of the costs already made, and approved security for payment of the rent.

And also in the case of alleged sale on execution, the costs were to be paid and security given for use and occupation, &c.

(*c.*) It will be seen in each of these cases, the same effect would follow substantially, if an appeal was taken as provided by the Code. For to effect the appeal, the costs of the proceedings would have to be paid, and security given to pay the rent, or the value of the use and occupation, in case of sale on execution. (*Spraker* agt. *Cook*, 16 *N. Y. R.* 568; *Opin.* DENIO, *J.* 573, 574.)

(*d.*) In each of the three cases named, by allowing the appeal and staying the issuing of the warrant, the landlord, or the party claiming under the sale on execution, would not in any material matter be placed in a worse or different situation than he would have been if he had pursued the course allowed before the statute of 1849,

*i. e.*, removed the cause by *certiorari*, and given the security required by the various provisions for a stay.

(3.) But the case here is entirely different. In case of proceedings for removal, because of the tenant's holding over after the expiration of his term, the issuing of the warrant was never stayed. (*Crary's Practice, Special Pro.* 469.)

(*a.*) There is nothing to show in the statute that it was intended to embrace any cases not before provided for. Without putting a strained or forced construction on the language used, the issuing of the warrant is only to be stayed in the cases previously provided for. It is believed this will be apparent on a close examination of the language used.

(*b.*) Suppose, for the sake of the argument, that there had been another case provided for under proceedings had for holding over under alleged sale on execution, where the party was not allowed to have a stay in issuing the warrant, and the same language was used as is used here, viz: * * * in order to stay issuing of such warrant. * * * Would it be questioned that the legislature did not intend to embrace such a case, but only intended by the language used, such warrant to embrace the case, where a stay was before allowed? The word *such*, before warrant, used in this statute, was employed to restrict the operation thereof, so as to only include the cases where a stay could be had before. If it had been intended that the stay was to be general in all cases, they would have employed language to have made it applicable generally, *i. e.*, * * * in order to stay issuing of *a* warrant. * * *

If the statute is not broad enough to include the case mentioned, the same reasoning will apply when the statute is such that no stay whatever is allowed.

(4.) Again, it would seem from the subsequent language used, that the legislature did not intend to have the warrant stayed only in those cases where it was allowed before. The security given is for the "payment of all rent accruing or to accrue upon said premises, subsequent to the application to the justice."

(*a.*) In the case where the proceedings are founded upon the ground the tenant is holding over after the expiration of his term, there is no rent accruing or to accrue. If the landlord succeeds upon the appeal, the judgment is conclusive that no rent had accrued or was to accrue.

(*b.*) The case of *Spraker* agt. *Cook* (*supra*), does not conflict with this view, and we think the distinction between the two cases is plain to be seen. 1. The object of the legislature in enacting the statute, as was mentioned, was to provide a uniform practice in the reviewing of cases decided in courts of justices of the peace. The appeal gave to the parties the rights they had if the cause was removed by an award of *certiorari*. A party was allowed a stay of proceedings, if the cause was removed by *certiorari*, in cases of sale on execution. The bond provided for the payment *for the rent and occupation* of the premises. (*See sub.* 3, § 46, *opin.* Denio, *J. Spraker* agt. *Cook, supra, p.* 374.) 2 In the case of a tenant holding over, there was no provision for recovering use and occupation. 3. In many cases the value of the use and occupation would in no wise compensate the landlord for the damages he had sustained. If he had rented the premises to another party for a larger sum, he could only recover for the value of the use and occupation in the market. If he had made a sale or rented to another, for a term of years, the premises, he would be liable for damages to the lessee or grantee, for not giving him possession. It would be impossible to determine in such case the amount of security that should be required to save the landlord harmless in the premises.

(*c.*) In the cases of non-payment of rent and insolvency, if the tenant was stayed the landlord would not suffer if his rent was secured, and the tenant could not deny his title. Where a party claimed under an alleged sale on execution, he could only claim the rights which the judgment creditor had, and until in possession, he could

only recover for use and occupation and *mesne* profits, and if they were secured, he suffered nothing. But where a tenant should hold over his term, his damages would be always dependent on the circumstances of each case, and the landlord would be compelled to resort to an action, and it is extremely doubtful, although he had been compelled to pay much larger damages, if he could recover any greater sum than the mere value of the rent of the premises during the time the appeal was pending, and up to the time it was determined, which might be at a time when he could not rent the same, and he would have to let them lie idle.

(5.) If the construction given to the statute by the court should be upheld, the whole scheme created by the legislature for the summary recovery of the possession of premises, would be thwarted. (*Duigan* agt. *Hogan*, 16 *How. Pr. R.* 164; *Opin.* WOODRUFF, *J.* 166, 167, 168.)

(6.) Lastly, the court should not give a construction to this statute which would involve the subject with so many difficulties, unless the same is imperative, and incapable of no other construction; but let the legislature render it fixed and certain, as to what was really intended, and although the language used is general, yet if the intent and meaning can be discovered to be otherwise, that should control. And that "intention should be deduced from a view of the whole and every part of the statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of the terms." (*Kent's Com.* vol. 1, 5th ed. p. 461, *marginal, p.* 462; *Homes* agt. *Carley*, 31 *N. Y. R.* 289; *Opin.* POTTER, *J.* 289, 290.)

And certainly if the language used is capable of two constructions, the court will give that which is consistent with the intention of the legislature in the enactment of these statutes, which was to enable landlords to get speedy possession of their premises. And it is submitted the court will not give such a construction to the statute as will compel them to give a meaning to the language used, different from its ordinary import. In the case of *Spraker* agt. *Cook* (*supra*), this was done, and the statute construed so as to extend its meaning to its utmost extent. But that was a case where a stay was allowed before. But in this case a stay was neither allowed, but the language used will have to be tortured, and a different and forced meaning given to the words used to embrace the case.

IV. There should be a new trial, with costs to abide the event.

## D. J. SUNDERLIN, *for plaintiff*.

I. The appeal was duly made, was duly perfected, and with the execution and service of the bond on the justice, it not only stayed all further proceedings on the judgment, but it removed the proceedings before the justice into the county court. (*Laws of* 1849, § 5, *sub.* 1, 2 *and* 3; *Duel* agt. *Burt*, 24 *Barb. S. C. R. pp.* 440-2; *Thompson* agt. *Blanchard*, 2 *Com.* 561.)

Justice BIRDSEYE, in the 24 *Barbour*, above cited, on page 442, says: "I think the method of appealing will be as follows: The notice of appeal must be given in the manner provided by section 354 of the present Code. Security for the judgment must be given in the form prescribed by section 356 of the Code, which it would seem from subdivision 3, of section 5, of the act of 1849, must be approved by some officer formerly competent to allow appeals to courts of common pleas. (2 *R. S.* 258, § 191, [187.]) Although no allowance of the appeal itself is now necessary.

"In addition to this, in cases of an appeal by the tenant, in order to stay the issuing of the warrant or execution, security must also be given for the payment of all rent arising or to arise upon the premises, subsequent to the application to the justice."

Judge BRONSON says, in *Thompson* agt. *Blanchard* (2 *Com.*), at page 562: "We

Sage agt. Harpending.

think an appeal is perfected, within the meaning of the Code, when the proper undertaking, with an affidavit of the sureties, has been executed, and notice of the appeal has been served on the adverse party, and on the clerk with whom the judgment or order was entered."

If the appeal was perfected, then the proceedings before the justice were removed to the county court. The party appealing had done all that was required of him.

He had sought another tribunal; the power and jurisdiction of the justice was superseded, and nothing remained for him to do except the ministerial act of making his return (if it was not already made), which is quite apparent from his return.

By the appeal, he had lost all jurisdiction over the proceedings, and he could no more issue his warrant to enforce his judgment, than he could if no such proceeding had been consummated.

II. If by the appeal being perfected, the proceedings were in fact removed to, or pending in another court, all further proceedings in the cause before the justice were effectually stayed. It was not a stay resting in the discretion of any court or judge, but it was a statute stay of proceedings; the law had declared the stay, and pronounced his jurisdiction at an end, so far as the enforcement of his judgment was concerned.

Any attempt, therefore, on the part of the justice to enforce his judgment, was without jurisdiction, and void.

Not only the justice issuing the warrant, and Harpending, at whose instance it was issued, but the sheriff, and all persons who executed, or assisted in the execution of the warrant, were trespassers.

Sage had the lawful possession. Harpending was unlawfully there. He had the tenant's bond for rent accruing at the very time, and yet sought to eject him without any legal right to do so.

The plaintiff claimed only to hold possession by virtue of his writ of possession. All other ground was, therefore, waived.

III. If the statute prohibits an officer from doing an act, and he does it in violation of the statute, the party at whose instance, and for whose benefit it was done, can acquire no right under or by virtue of the act, and the act itself is absolutely void.

It was claimed on the trial, that the statute of 1849, in reference to appeals and staying proceedings, did not apply to this class of proceedings to recover the possession of land, but it is apparent from the reasoning of Judge Denio, in *Spraker* agt. *Cook* (16 *N. Y. R.* [2 *Smith,*] 568), that the provision applies to all cases of summary proceedings cognizable by a justice of the peace.

IV. The justification of the defendant entirely failed. The ruling of the judge at the circuit was clearly right. The charge was quite as favorable to the defendant as the facts would warrant; indeed, he has no reason to complain, and a new trial should be denied.

*By the court,* JAMES C. SMITH, J. It was held at the circuit that the warrant issued by the justice was void, and consequently, that it furnished no justification to the defendant. In order to affirm this ruling, it is necessary to maintain, either, that the security given on bringing the appeal, stayed the issuing of a warrant, or that by the operation of the appeal itself, the proceeding was transferred to the county court, so that the justice could no longer act in it. These

propositions will be considered in the order in which they are stated.

The question whether the issuing of a warrant was stayed by the security given, depends upon the construction of certain statutory provisions respecting summary proceedings to recover the possession of land, to which it becomes necessary to refer.

In 1849, an act was passed amending the Revised Statutes relating to summary proceedings, so as to confer jurisdiction of such proceedings upon justices of the peace. (*Laws* 1849, *p*. 291, *chap.* 193.) One of the sections of said act provided that the proceedings before a justice may be removed by appeal to the county court, in the same manner, and with the like effect, and upon like security, as appeals from the judgments of justices of the peace in civil actions, but that in case of appeal by the tenant, in order to stay the issuing of a warrant or execution, security should also be given for the payment of all rent accruing or to accrue upon the premises, subsequent to the application to the justice. (§ 5, *sub.* 2.) It is by virtue of this latter clause of the section, that the undertaking given in this case is claimed to have operated as a stay. The defendant's counsel insists, however, that the provision as to a stay does not apply to proceedings instituted against a tenant solely on the ground that he is holding over after the expiration of his term, and I am inclined to think in view of the provisions of the Revised Statutes, *in pari materia*, that the construction contended for by him is correct.

The Revised Statutes provide that summary proceedings to remove tenants, may be resorted to in four distinct classes of cases. 1. Where the tenant holds over after the expiration of his term. 2. Where he holds over after default in the payment of rent. 3. Where the tenant has taken the benefit of an insolvent act, or of an act relieving from imprisonment; and 4. Where such person continues in possession of real estate which has been sold under execution against him, after title under such sale has been perfected. (2 *R. S.* 512,

§ 28.)  Section 43 provides that whenever a warrant shall be issued for the removal of the tenant, the relation of landlord and tenant between the parties, shall be deemed to be cancelled and annulled.  The next three sections provide for a stay of the issuing of the warrant in each of the last three classes of cases, on security being given by the tenant, as required by the statute.  In the case of a proceeding for nonpayment of rent, the tenant is to pay the rent due and the costs, or to give security for the payment of them in ten days; and by an amendment adopted in 1857, if he does not within the ten days produce to the magistrate satisfactory evidence that the rent and costs have been paid, the warrant may issue at any time thereafter.  (*Laws* 1857, *chap.* 684, *p.* 510, § 4.)

When the application is founded on the fact that the tenant has taken the benefit of an insolvent act, &c., the tenant must pay the costs, and give security for the payment of the rent as it shall become due.  And where it is founded upon an alleged sale by execution, the occupant must pay the costs, file an affidavit that he claims possession by virtue of some title or right acquired after the premises were sold, or as guardian or trustee for another, and execute a bond to pay the costs which may be recovered against him in any ejectment that may be brought by the applicant within six months, to pay the value of the use and occupation of the premises from the date of such bond till the applicant shall recover possession in such ejectment, and not to commit waste.  But no provision is made for staying the issuing of a warrant in the case of an application on the ground that the tenant is holding over after the expiration of his term.

Section 47 provides for a *certiorari* from the supreme court to review any adjudication made in such proceedings, but it directs that the proceedings shall not be stayed by such *certiorari*, or any other writ or order of any court or officer.

Section 48 provides, that whenever any such proceedings brought before the supreme court by *certiorari*, shall be

reversed or quashed, the court may award restitution to the party injured, with costs. And the 49th section provides, that in all cases the prevailing party shall recover costs, and may maintain an action to recover them; and if the proceedings be reversed or quashed by the supreme court, the tenant may recover any damages he may have sustained by reason of such proceedings, with costs, in an action on the case.

While, on the one hand, the stringency of these provisions evinces the design of the legislature to make the proceedings summary, to which they relate, on the other hand, they attempt to protect the substantial rights of tenants, and they are surely applicable as well to proceedings before justices of the peace, under the act of 1849, as to those instituted before any of the other magistrates to whom jurisdiction was given by the Revised Statutes. The jurisdiction of justices of the peace is conferred, not by an independent statute, but by an amendment of section 28 of the Revised Statutes, the effect of which is to include justices of the peace among the magistrates who are vested with jurisdiction by that section.

But the provisions of the act of 1849, respecting the stay of the issuing of a warrant, apply exclusively to proceedings before justices of the peace. If they have the effect which the counsel for the plaintiff attributes to them, it follows that a tenant holding over after the expiration of his term, if proceeded against before a justice of the peace, may stay the issuing of a warrant after judgment against him, but not if he is proceeded against before any of the other classes of magistrates having a co-ordinate jurisdiction. And if this be so, the right is of little value to tenants, proceeded against on that ground, since it is in the power of landlords to deprive them of it by instituting proceedings before some magistrate other than a justice of the peace. The better construction seems to be that the section of the act of 1849, above referred to, does not create a right to stay the issuing of the warrant in a case where it did not previously exist, but it

provides that in order to exercise the right to stay, in cases where it previously existed, security shall be given as therein prescribed. Its language is, not as in the sections of the Revised Statutes, *in pari materia* (2 *R. S. p.* 515, §§ 44, 45, 46), the issuing of the warrant "*shall be stayed,*" if the tenant shall give the security prescribed, but it is "*in order to stay* the issuing of such warrant," security shall be given, &c. This implies a right to stay, already existing, and it prescribes the form of security to be given in order to exercise such right.

It is by no means clear that the section supersedes the provisions of the Revised Statutes, even as to the form of security, or that it does anything more than to require an additional security in the case of an appeal; but it is not necessary to decide that point. The construction above adopted, gives full effect to the language of the section, leaving it to operate on the three classes of cases in which a right to stay the issuing of a warrant is given to the tenant by the Revised Statutes.

The proposition that the appeal, of itself, deprived the justice of authority to issue a warrant, requires but a moment's consideration. If the legislature intended that an appeal should have that effect, it was useless and unmeaning to enact that in order to stay the issuing of a warrant, security should be given in addition to that required on appeal. The appellate court could not issue a warrant upon the judgment of the justice, and if the justice could not do it by reason of the appeal, the giving of further security to prevent it, would be an idle ceremony. I apprehend that an appeal taken by virtue of this statute, of itself, merely transfers the proceedings to the county court for the purpose of review, and does not affect the power of the justice to issue a warrant to enforce his judgment.

If these views are correct, the warrant was regular and valid, and the defendant having been put into possession of the premises by virtue of it, was justified in using so much

force as was necessary to defend himself and maintain his possession.

But as the construction of the statute is not altogether free from doubt, and there are other views of the case leading to the conclusion above stated, I will briefly consider them.

If it be assumed that the justice had not power to issue a warrant after the appeal, nevertheless, his judgment, until reversed or set aside, was of force as an adjudication, and it determined that the lease had expired, and Harpending was entitled to the possession of the premises. The fact that an appeal had been taken to another court, did not affect the conclusive nature of the judgment as a bar, while it remained unreversed. (*Harris* agt. *Hammond*, 18 *How. Pr. R.* 123.) The counsel for the defendant requested the court to charge to that effect, but the learned judge declined, and charged that the judgment ceased to be *res adjudicata* when the appeal was perfected, with security. The point was material to the defendant, for if he was stayed from suing out a warrant on the judgment, yet in this collateral action he was entitled to use the judgment as evidence of his right to the premises, and it was important to him to maintain that he had a right. I conceive the ruling on this point was erroneous.

But let it be further assumed not only that the warrant was void, but also that the judgment had ceased to be a bar, and that it was an open question whether the tenancy had terminated, or was still in force, how then stands the case? The landlord, and the owner in fee, claiming that the term had expired, enters without process, and without force, during the temporary absence of the tenant, but the tenant attempting soon after to oust him by violence, the landlord resorts to force to maintain his possession. Which committed the first assault? There is not a particle of evidence that the plaintiff was entitled to the possession. His lease is not shown, and nothing appears on that point, except that he claimed that the term continued till April, 1866, and the defendant disputed the claim. The defendant, when he entered, was

not guilty of an assault, or a breach of the peace. Even if it be assumed that he was a trespasser, his position was very different from that of a mere stranger. He owned the premises in fee, and claimed to be entitled to the possession. Under these circumstances, the plaintiff had no right to take the law into his own hands, and attempt to dislodge the defendant by force, although his intrusion was but recent. The defendant being in the actual possession, had a right to maintain it, and to use force, if necessary for that purpose. This precise point was adjudged by this court in the case of *Parsons* agt. *Brown* (15 *Barb.* 590).

The defendant being justified in using so much force as was necessary to defend himself and maintain his possession, the only question for the jury, in any view of the case, was, whether he used an excess of force.

The result is, that a new trial should be ordered.