### John Clark v. William H. Craig and others.

*Assignments for benefit of creditors : Assignees : Reasonable diligence : Culpable negligence.* The assignees of a failing debtor, under an assignment for the benefit of creditors, are bound to use reasonable diligence in attending to and closing up the trust; and they are liable for any damage resulting from culpable negligence.

*Assignees : Assignor : Fraud : Collusion.* Such assignees may entrust the chief control of the business to the assignor, where it is done without fraud or collusion, under the honest belief that such is the best course to get the value of the assets.

*Culpable delay : Payments : Interest.* Under the circumstances of this case, where most of the property was sold and most of the assets realized in not much more than a year, and the whole, with a few exceptions, in a little over two years, it is held there was no culpable delay; and for any mere delay in payment, interest is in law regarded as a sufficient compensation.

CLARK *v.* CRAIG.

*Assignees : Creditors: Equities.* A creditor having knowledge of the assignment, who has failed to call the attention of the assignees to his rights, or to object to their course, has no peculiar equities to complain of their action in treating his claim as unpreferred, where they have acted honestly upon information that the claim had been placed in the list of preferred debts by mistake.

*Assignees : Lands misappropriated : Value : Auction biddings.* Where certain lands, in which an undivided half interest belonged to the trust under the assignment, have been put up at auction after full notice, and the assignor, in order to have the whole sold, has purchased upon his individual note the other undivided half, and the lands, after being bid off at the auction sale, have been conveyed to unpreferred creditors, in consideration of their releasing their debts, and the assignees charge themselves with the half of the purchase bid, their action will not be held culpable, in the absence of any showing of the real value of the lands, or that there was improper management, upon mere inferences to be drawn from a comparison of the amount of the auction price with that of the assignor's note, given for the other half, or with that of the debts released; the assignees could only be justly charged with the real value of the lands, and this will not be presumed, without evidence, to have exceeded the auction biddings.

*Assignees : Storing goods : Insurance : Negligence.* The storing of the unsold remnant of goods in a warehouse without insurance, awaiting an advantageous sale, is held, under the circumstances of this case, not culpable negligence, such as to justify charging the assignees with the value of such goods upon their destruction by fire.

*Heard May 7.*    *Decided July 8.*

Appeal in Chancery from Wayne Circuit.

*T. C. Owen* and *D. C. Holbrook,* for complainant.

*E. C. Hinsdale* and *C. I. Walker,* for defendants.

CAMPBELL, J.

This cause arises out of a general assignment made by defendant Hutchins to the defendants Craig and Walker, June 8, 1857, and the bill was filed to obtain payment of a debt claimed to have been due under the trust, and to have been left unpaid wrongfully.

The assignment contained two preferred classes, those in schedule A to be paid first, and those in schedule B next; the creditors not specified coming in for the residue. The name of complainant appears in schedule A, as holding a note for nine hundred and seventy dollars and seventy-four cents, and in schedule B as a creditor (without giving the nature of the debt) for a precisely similar amount.

The property assigned, besides credits and accounts, consisted of what remained of a considerable stock of goods,—chiefly groceries,—and the assignees put the disposal and management of the concern into the hands of the assignor, with some help from clerks; and for about a year he continued to dispose of the property and settle the business in the store which he had before occupied. At the end of that time the store was vacated and the clerks discharged, and the remnant of the goods was removed into a warehouse, which was soon after destroyed, and the goods perished with the building, and without insurance.

The return filed in this court does not contain the dates and items of all the matters of account. As nearly as we are able to infer from the papers on file, it appears that the principal part of the business was completed in a little over a year from the date of the assignment, the remainder of the receipts being mostly in scattered and moderate amounts for several months thereafter.

A payment was made on complainant's debt at some time not mentioned, which is assumed to have been since the assignment. In September, 1862, he procured Hutchins to renew the note, which was near outlawing. He then brought suit, and obtained a personal judgment against Hutchins in June, 1863. The present bill was filed shortly after, and is based upon the alleged misconduct of the assignees in wasting the property, neglecting the trust, and failing to pay complainant, when the other preferred creditors have been paid. The bill alleges complainant's debt to have been among the first to be paid in full. The account, as finally balanced by the court below, upon exceptions, required the assignees to pay so much of the debt as was preferred, and must have done so on the ground that all the other preferred debts had been paid, as the fund fell short a considerable sum of being enough to pay complainant after allowing the charges and payments already expended.

Complainant appeals, claiming pay for his whole debt,

and insisting that the assignees are responsible. He especially claims that two items should be charged to them, one a sum of two thousand dollars, the alleged value of certain lands transferred, and the other three thousand dollars, the value of goods burned, and that they should not be allowed their clerk hire.

The assignees of a failing debtor are bound to use reasonable diligence. in attending to and closing up the trust. For any damage which results from their culpable negligence, they may be called upon to answer. And the court below applied this principle in compelling them to contribute sufficient to put complainant on the footing of the other preferred creditors.

The question arises whether their liability should be extended further.

Upon a general and cursory examination of the record, and upon the argument, a strong impression was created that there had been very great carelessness on the part of the assignees, and that it had been long and continuous. A fuller and more élaborate examination, while it shows a great degree of personal inattention on their part, also shows that it has been less serious in its nature and its consequences than we were at first led to infer. And the action of the complainant seems to have been such as to put him in a different position concerning his right to complain than he might, perhaps, have occupied under different circumstances.

The policy of the assignees, in giving the chief control of the business to the assignor, was not illegal, if they believed it to be the best course to get the value of the assets. It is not claimed to have been fraudulent or collusive. It is sworn positively that it appeared to be and actually was the best course, and there are no facts tending to show the contrary.

It also appears that most of the property was sold and most of the assets realized in not much more than a year, and the whole, with few exceptions, in a little over two

years. There is no evidence which shows culpable delay in realizing the proceeds of the fund, and the expenses, which are sworn to be just and reasonable, do not appear to be otherwise.

For any mere delay in payment, interest is in law regarded as a sufficient compensation. And complainant can, for such a reason, have no legal or equitable ground of complaint, except on his own account. He has received interest on the preferred debt. His right to payment on the other debt will depend on the state of the fund, and will be referred to presently.

We think that complainant has shown no cause for serious personal complaint against the assignees for their action, although his legal rights are vindicated and are not now denied.

The sums in the two schedules credited to him being identical in amount, the assignees were informed that there was a mistake, and that the debt was not designed to be preferred. In fact there were two debts, and the note was a valid charge on schedule A. Though legally liable, they were not guilty of any fraud in the assumption they made.

Complainant became informed of the assignment very soon after it was made. It does not appear distinctly whether he saw it or not. If he did not, he gives no reason why. Instead of calling on the assignees, he went directly to Hutchins, and if his recollection is correct he saw him repeatedly, conversed with him about his claim, obtained assurances of its ultimate payment whether the assignment paid it or not; and finally in 1862, some years after Hutchins had ceased to have any thing to do with the trust, and while he was at Saginaw, got him to renew the note, on which he proceeded to judgment. There was nothing to be gained by such a course, as against the assignees, and it is evident complainant desired to keep up his claim against Hutchins personally. The assignees being responsible men, and Hutchins not being good at that time, these facts have some tendency to support the idea that af-

ter this lapse of time complainant's memory may have misled him, or he may have originally confounded assurances that Hutchins would see him paid, with assurances that he would be paid out of the assignment.

But be this as it may, complainant does not appear at any time during the natural course of the business to have approached or communicated with the assignees in any way. He was fully aware of the extent to which the assignees had trusted Hutchins, and he testifies that Hutchins, instead of paying creditors, had taken the dividends and put them in his business at Saginaw. If this were so, it would have been the immediate duty of complainant to inform the assignees, if ignorant, and call them to an account if they knew it. But the proofs indicate that this must have been a mistake, and that there was no such diversion from the purposes of the assignment. All this shows that complainant had done nothing to relieve the assignees of their misapprehension, or to put them in fault for not making payment on his note.

So far as he is concerned, then, he has no peculiar equities, and none whatever beyond those attaching to any creditor who has not seen fit to interfere with assignees, or to object to their course. And the only matter open for inquiry in his favor is whether they have not been charged with any amounts for which they ought to respond to him.

It is claimed there are two such items. The first is the value of certain lands in which Hutchins held an undivided half interest. This land was put up at auction, and the entire price bid was a little over fifteen hundred dollars. In order to have the whole sold, Hutchins gave his individual note to Mrs. C. M. Garrison for the other half. It was bid off by Theodore H. Eaton, and was conveyed to certain unpreferred creditors, who gave up their debts amounting to about eleven thousand dollars. The assignees stand charged on their books with the half of the purchase bid.

It appears that this sale was made at open auction and

after full notice, and that there were other bidders. It does not appear in any way that the land would have brought any more, or that there was any improper management. The land seems to have been stripped pine land, and at that time was very probably not much in request. The facts which have caused difficulty are the amount agreed to be paid by Hutchins for the other half, and the amount of debts released. A moment's consideration will show that the released debts were worth as much on the dollar as the note given to Mrs. Garrison for two thousand dollars, and that the percentage at which they settled would have made that note worth considerably less than half of the auction price of the land. Under the circumstances then existing the personal liability of Mr. Hutchins was of no definite value, and depended entirely on the chances of future success, with no evident prospect of it. While such transactions should be scrutinized closely, yet the assignees can only be justly charged with the real value of the land; and aside from the auction biddings there is no proof to fix it.

The other item is the value of the goods burned. This also the court below rejected. In order to determine the precise condition of affairs it is necessary to consider in what way this question arises on the proof.

The only reference to it in the testimony is where Hutchins, as complainant's witness, was first put on the stand and gave a continuous narrative of what took place after the assignment. Having stated that he had continued about a year in the old store on Woodward avenue, doing every thing he could to close up the business, and that he had sold the goods as fast as possible and chiefly at wholesale, he proceeds as follows:

"After I left the store on Woodward avenue I removed the remainder of the goods to the foot of Bates street. I think this was the year after the assignment. These goods were taken to Stimpson's warehouse at the foot of Bates street. After they were taken there his warehouse was de-

stroyed by fire, with the goods. I think the value of the goods destroyed belonging to the assignment was two thousand to three thousand dollars."

No question was asked about insurance, or concerning any other fact which might bear upon the merits of the matter. It was not put in such a shape as to indicate that any point was to be made on it, and was not further alluded to by either party, so far as appears, until the argument before the commissioner, who allowed the charge. It is only by inference and admission that it appears at all there was no insurance.

It was urged, upon the argument, that it was contrary to the duty of the assignees to keep these goods so long unsold and then store them away without insurance. If that had been the case the argument would have been very forcible. But the testimony will not bear that construction. It is very clear from the evidence and the accounts that there had been active diligence in making sales, and that the bulk of the goods had been disposed of. It would have been an improper thing for the assignees to have retained a rented store longer than there was any occasion for it. The remnant unsold would have to be removed where it could be housed and sold more cheaply. There is nothing to indicate, and it cannot be supposed there was a design to do any thing else with these remaining articles than to dispose of them to the best advantage and without delay. And if so, and in the absence of testimony to the contrary, we cannot charge the assignees with serious negligence in omitting to insure a parcel of goods of that character, held under those circumstances. The risk was not so great as to make it remarkable for any one to leave the goods uninsured, when there was no probability of any delay in disposing of them.

The point was raised on the argument that the complainant's bill is only framed for the purpose of obtaining relief as a creditor of the first class. We are inclined to think that is so, and that the issue covers no more. But

as all the ground seems to have been covered by proofs, we have preferred to dispose of the case on the facts.

We think the decree correct, and it must be affirmed, with costs of this court in favor of the defendants.

The other Justices concurred.