Austin Abbott, Referee.
The petition recites a general assignment for benefit of creditors, and that the petitioner is a creditor of the assignor and interested in the distribution of the proceeds ; and asks an account of the trust fund and a decree directing payment of his proportional part.
The objections of the assignee involve several questions on the construction of the statute which depend, in part, upon the history of the law of assignments and of their judicial supervision, which it will be more convenient to notice first before passing on the specific objections.
At common law, and before the recent modifications which equity and more lately the statute regulations have introduced, an assignee for the benefit of creditors was but the hand of the assignor in the distribution of his estate (Re Fulton’s estate, 51 Penn. St. 204, 211; Marbury v. Brooks, 7 Wheat., 556, 579); except where, as has been usual in England and in some of our States, the assignment requires an express assent on the part of creditors, which being manifested, it partakes of the nature of a compromise or composition. By our law the assent of creditors is presumed, in the absence of evidence to the contrary, from the beneficial nature of the trust; and it was finally established before the subject was regulated by statute that the assignee was, both at law and in equity, a trustee for the benefit of all non-dissenting creditors who were within the terms of the assignment.
In projjortion as this doctrine became fully established, the want of a convenient procedure by which the assignee might be both held responsible, and pro *313 tected as a trustee ; by which he might compel a disclosure of concealed assets; might ascertain, with sufficient certainty to protect himself from mis-payments, who were creditors ; and by which he might on the one hand be required to account and on the other hand might have his accounts adjudicated, without the expense of a bill in equity. These, with other considerations of policy for» the prevention of fraud, led to the adoption of the act of 1860 and its subsequent amendments, which were consolidated and revised in the general assignment act of 1877.
The policy of this legislation has been, not to embarrass the right of making such assignments, but to secure publicity, by acknowledgment and record, and to subject the assignors and their estates, from the time of the making of the assignment, to the summary jurisdiction of the court; to require the assignee to give security promptly, as a condition of his power to convert and apply assets under it; to authorize the assignee to gain possession of all the assets, by compelling the debtors to make discovery, if they fail to make a schedule of assets; and to authorize the assignee to ascertain who claim as creditors, by advertising for claims and requiring verified vouchers ; lastly, to provide a simple and direct method of accounting, modeled upon that provided for executors and administrators.
For these purposes the statute has subjected the assigned assets and the parties to the assignment from the moment of its record, to the jurisdiction of the county court, which is vested therefor, with powers similar to those exercised by surrogates, and further equity powers.
The various modifications of the amending and revising statutes carry out this purpose within these general lines; and the settled practice in administering the estates of decedents is a proper guide in the interpretation and application of analogous provisions in *314 these statutes (Gifford v. Black, 22 Ind. 444); especially under statutes like ours, which repeatedly refer to the powers of surrogates, and the forms of proceedings before surrogates, as a guide (see General Assignment Act of 1877, § 17, subd. 9; see also L. 1860, c. 348, § 4; L. 1867, c. 860, § 4; L. 1870, c. 92, § 1; L. 1872, c. 838, § 1; L. 1875, c. 56, § 2; same statutes, Keiley, 4, 6, 18, 16).
I. The first objection to the petitioner’s proceedings is that the petition is not sufficient. It is urged that if this proceeding is had under the act of 1877, it cannot be sustained, because the former statutes, under which this assignment was made, are repealed (L. 1877, § 28), and that this proceeding never was pending under the former statutes, and therefore is not within the saving clause; while, if the petition be regarded as filed under the former statutes, it is not sufficient for not stating the particulars required by the act of 1872 (L. 1872, c. 838, amending § 4 of L. 1860; Keiley, 10).
The repealing clause declares that the act of 1860 “and the several acts amendatory thereof are hereby repealed, but this shall not affect any proceeding had; and any proceeding pending under the acts hereby referred to, may be continued under this act” (L. 1877, § 28).
The theory of the first branch of the objection above stated, is that each petition in reference to an estate forms a new and. distinct proceeding ; and that by the repeal of the act of 1860, and its amendments, the jurisdiction of the court over each estate fell, except so far as it may have been saved by the pendency, at the time the repeal took effect, of a petition or other such proceeding in reference to the estate.
I am of opinion that in contemplation of law the entire subject of an estate is one proceeding, within the meaning of the saving clause ; and commences with *315 the record of the assignment, and continues until the final settlement. The policy of the law, as we have seen, is to place the whole estate under the direction of the court; its jurisdiction is acquired by the filing of the assignment (act of 1877, § 25, last clause); and in some cases the judge may on his own motion, require an accounting (§ 11, last clause).
This view is confirmed by the language of section 2 of the act of 1874, chapter 600 (Keiley, 15); which declares that section 1 “shall apply to all cases of assignment heretofore made .... which are now depending unsettled.”
But if the petition were treated as if filed under the former statute, it would be sufficient; for the details prescribed by the act of 1872, were dispensed with by L. 1875, chapter 56, section 2, amending section 4 of the act of 1860 (Keiley, 16); and under that-act a verified allegation of being a creditor is prima facie sufficient (Burwell v. Shaw, 2 Bradf. 322; Thomson v. Thomson, 1 Id. 24; Gratacap v. Phyfe, 1 Barb. Ch. 485).
II. Is the assignment void, or the assignee exonerated from accounting, because no bond or schedules were filed %
It must be regarded as fully settled that the failure to file a bond does not prevent the title from vesting in the assignee. From the time of the record of an assignment which has been accepted by the assignee, if not from the time of its acceptance before record,* the title of the assignor is divested (Thrasher v. Bentley, 1 Abb. New Cas. 39, and cases cited ; Von Hein v. Elkus, 8 Hun, 516, overruling Hedges v. Bungay, 16 Abb. Pr. N. S., 313; S. C., 3 Hun, 594; and dictum in Juliand v. Rathbone, 39 N. Y. 369); although *316 until bond is given, the assignee has no power to give title by transfer of the assets. (Brennan v. Willson, Ct. of Appeals, 4 Abb. New Cas. 279). It is true that the giving of the bond depends on the previous making of inventories ; but the statute gives the assignee power to compel a discovery for this purpose, if necessary.
The question as to the right to compel the assignee to account before he has given a bond, has not been determined in any reported case in this State.*
I am of opinion that where it is shown that the assignee has taken possession of assets under an assignment duly acknowledged and recorded, he is liable to account in respect thereto, without regard to whether any bond or schedules have been filed, or whether the assignor and assignee regarded the assignment as complete, or inchoate and revocable. Section 8 of the general assignment act, which provides that “ a failure to file any bond required by or under this act, or the acts hereby amended, within the specified time, will not deprive tlie county judge of his power over the assignee or 'the trust estate,” is declaratory of the principle which would be applicable under the statute, without an express provision. The cases in other jurisdictions upon this question are as follows :
In Ward v. Lewis, 4 Pick. 518, creditors filed a bill against assignees, alleging that complainants were preferred, and that the assignees had paid the other debts to the exclusion of theirs. Defendants admitted the execution of this indenture, but alleged that it was never intended to take effect until a majority in interest of the creditors should sign, and that it was never delivered by the debtors or creditors as their deed to the assignees ; and lastly, that the debtors compounded with their creditors, and that the deed, if it had any *317 effect, was thereby rescinded. Held, that, the conduct of the parties, and the possession of the instrument, raised a presumption of delivery which could not be in escrow, because it was made to a party ; and that the assignees having taken possession as such, and having had notice of the plaintiffs’ claim, were liable to the plaintiffs, but only for assets which they had actually received; and that it was no defense that the assignees had, by mis-apprehension, paid over all the funds to other creditors. In this case there was no statute requirement of bond. Under the general assignment act of Pennsylvania, which gives the power to the court to require an account from assignees under recorded assignments, held, that the court may require it not simply from those that may have voluntarily placed themselves under the jurisdiction of the court, by giving bond and filing an inventory, but the test is whether the person called upon to account is an assignee or trustee within the meaning of the statute, and not whether he has performed his duty as such trustee or assignee ; and the omission to file a bond or inventory does not, therefore, exonerate^ him from the obligation to account for assets actually received (Whitney’s appeal, 22 Penn. St. 500).
On the contrary, it has been said by the supreme court of the United States, that to oust the jurisdiction of a court of equity, by a plea of proceedings pending in the statutory court, it should appear that the bond, &c., has been filed, because the statutory jurisdiction depends on it (Shelby v. Bacon, 10 How. U. S. 56, 69; disapproved in Whitney’s appeal, 22 Penn. St. 505).
III. Is the petitioner confined to remedy by action for an accounting, or may he proceed by petition ?
The ground of the objection on this point is, that the person to whom the assignee transferred the assets, and the assignor, should be parties, as well as other *318 creditors; while this proceeding is only between the petitioner and the assignee.
No doubt the assignee might bring an action, joining his transferee and the assignor, and those interested, or claiming to be interested in the estate, to recall the assets and have them distributed, and his liability, if any, determined; and although under the former practice such a bill, perhaps, might be obnoxious to the objection of multifariousness, such an action ought to be sustained under the code. The actual pendency of such an action might be a reason for suspending proceedings on such a petition as this, but the proceeding by petition instead of by action is favored (See, for instance, Bloodgood v. Bruen, 2 Bradf. 8; Groshon v. Lyon, 16 Barb. 461).
Under the statutes as to general assignments (L. 1860, c. 348, § 4, amended by L. 1867, c. 860; L. 1872, c. 838; L. 1875, c. 56; same statutes, Keiley, 3, 5, 9, 16), “any creditor,” or “any person interested in the estate,” may cite the assignee to account, and the same rule is preserved by section 11 of the act of 1877.
It is true that the assignee is entitled to have his entire account settled in one accounting, such as to protect him against all who could claim under the assignment. In an action, the court will enforce this right on an objection for defect of parties (Bailey v. Bergen, 67 N. Y. 346, rev’g 4 Sup’m. Ct. [T. & C.] 642). In a proceeding by petition under the statute, the right is protected by the first clause of section 12, which provides that, “ a citation issued on the petition of a creditor may be addressed to and served on the assignee alone, but on or after the return of such citation the assignee may have a general citation issued to all parties interested.”
This practice, like others in the proceedings, is borrowed from the law applicable to executors and ad *319 ministrators, under which the rule is the same (McLellan's Prob. Pr. 300).
A petitioner, therefore, is entitled to an order for an accounting without joining other creditors, &c., but the assignee may make any others parties for his protection. He is not entitled to require the petitioner to bring an action against the transferee of the assets.
IY. Is an assignee who accepts an assignment for the benefit of creditors, and covenants to fulfill the trust, exonerated from accounting to an unpreferred creditor by the facts that the assignment contains a preference, and that an assignee in bankruptcy has been appointed %
It is not to be questioned that such an assignment is void as against the assignee in bankruptcy (U. S. R. S. § 5128), and that it would be so declared in the bankrupt court; and it has recently been held in the supreme court of this state, in Bostwick v. Burnett, 11 Hun, 301 (opinion by Barnard, P. J., Gilbert, J., concurring, 1877), that a general assignment with preference is voider se, under the bankrupt act, in such sense as precludes the assignee from recovering as such, in an action for the assets or for their conversion.
In the present case it does not appear that the assignee in bankruptcy has taken any steps in relation to the estate.
I am of opinion that the assignee, under a voluntary assignment with preference, is liable to account, in respect to assets which he actually received under the assignment, to a creditor not claiming under a preference, unless and until the assignee in bankruptcy-attacks the assignment.
Burrill, after explaining the effect of preference under the bankrupt law, says that in the absence of actual fraud, the assignment, even though constructively fraudulent, is not void, but voidable in bank *320 ruptcy, and is voidable only at the suit of the assignee (Burrill on Assignments, 3d ed., 71, § 54). Perry says, that the deed though voidable by creditors and assignees in bankruptcy, is good between the defendants themselves (2 Perry on Trusts, 132, § 587). If the provisions of the assignment for the benefit of creditors are contrary to law, and might be set aside on proceedings had for the purpose, yet if all parties proceed under it, the trustees must find their power in the deed of assignment, and must proceed in accordance with it in selling the property, and in paying the debts. The principle is, that so long as the law does not interfere to set aside the assignment, the assignee must follow the only power given to him, to wit — the deed of assignment (2 Id. 145, § 597).
The same question arose in Seaman v. Stoughton, 3 Bart. Ch., 344, under the bankrupt act of 1841, and the court held that an assignment with preferences is not void as against a bill for an accounting by a creditor, but only as against an assignee in bankruptcy. “It would be contrary to every principle of equity,” said the chancellor, “to permit a trustee, who "has received the property of a debtor in trust to apply it to the payment of creditors, to set up the defense of fraud, in making and receiving the transfer for the benefit of such creditors, as a defense to a suit brought by them to compel a performance of the trust; without showing that the fund had been recovered from him by the parties intended to be defrauded, or even that they had' ever made any claim to it.”
The fact that the assignment with preference is voidable, not absolutely null and void, is plain, from the fact that if the assignee had applied the assets pursuant to the provisions of the assignment in good faith, he would be discharged thereby from further liability even to an assignee in bankruptcy, at least as to so much of the apxjlication of the assets as did not involve *321 carrying the illegal preference into effect (Burrill on Assignments, c. 40, §§ 459-462).
A trustee who has received the trust fund and applied it differently from the mode which his covenant and his legal duty requires, cannot avoid the obligation to account, by suggesting a paramount title to which he has not yielded, and which has never been asserted.
Y. Does a creditor, by proving his claim in bankruptcy, disclosing the fact that the bankrupt has made a general assignment for benefit of creditors, but without any express release or surrender of his claim under that assignment, and without any act or election on the part of the assignee in bankruptcy, preclude himself from calling the assignee under the voluntary assignment to an accounting in the state court %
It has been much disputed in the bankrupt courts, whether proving a claim ipso facto releases to the assignee any security held. The weight of authority seems to be that for the purpose of proceedings in bankruptcy and as against the assignee in bankruptcy, proving a claim without disclosing the existence of a security, waives the right to pursue the security ; but that proving upon a disclosure of the security, without any express release by the creditor, or manifestation of election on the part of the assignee to accept the security, does not waive or surrender it (See Hatch v. Seely, 13 N. Bankr. Reg. 381, 383, and cases cited ; in re Frost, 11 Id. 69, 73; in re Grinnell, 9 Id. 29, 33; in re Parkes, 10 Id. 82; Stewart v. Isidor, 5 Abb. Pr., N. S. 68, 73; S. C., 1 N. Bankr. Reg., 485, 489; in re Bridgman, 1 Id. 312, 315; in re Winn, 1 Id. 499; Merchants’ Bank v. Comstock, 55 N. Y. 24; in re Saunders, 2 Low. 444; S. C., 13 N. Bankr. Reg. 164). It is the settled doctrine of the bankrupt courts that in either case the title of the creditor to his security is at least thereafter held at the peril of the assignee’s election to take it, or the court’s interference *322 against its enforcement (Lee v. Franklin Av. Inst., 3 N. Bankr. Reg. 53, 218; Davis v. Anderson, 6 Id. 146).
I should add that it is doubted in this court, and with apparent reason, whether a general assignment for benefit of creditors is a security within the rule (Matter of Backer, 2 Abb. New Cas., 379).
It seems to be clear that the proof of claim made in bankruptcy in this case, by the petitioner, does not of itself prevent him from citing the assignee to account (see also Matter of Herman, 53 How. Pr., 377); it is for the assignee in bankruptcy to set up the objection, if it is available.
YI. Is the petitioners’ judgment competent, and if competent, conclusive evidence against the assignee, on this petition %
1. There is no doubt that an assignee for benefit of creditors may disaffirm or impeach, on the ground of fraud or collusion, a judgment recovered against the assignor, whether before or after the assignment. But no such ground is suggested here.
I have already shown that a verified allegation of indebtedness is sufficient to entitle the creditor to the issue of a citation ; but one object of this reference is to determine whether upon the facts presented as evidence of that allegation, the petitioner is entitled to be regarded as a creditor. I have, therefore, considered the effect of the judgment fully.
I am of opinion that, in the absence of any suggestion of fraud, collusion, undue advantage or mistake, a judgment recovered against an assignor for benefit of creditors, even after the making of the assignment, on a litigation of the merits and on a deliberate and intelligent decision by a court of competent jurisdiction, is conclusive on the assignee, as to the fact and amount of an indebtedness established thereby on a consideration existing before the assignment. This I under *323 stand is in accordance with, the general opinion of the profession, and the practice of the courts.
The authorities bearing on the question, although some of them do not go quite to this length, present very little conflict. They are, in detail, as follows :
A judgment obtained without fraud or collusion is conclusive evidence in suits between creditors in relation to the property of the debtor, of the indebtedness of the latter and of the amount of such indebtedness. And this is so, even though the judgment was recovered after the transfer under which the adverse parties claimed, and they were not parties to the action (Candee v. Lord, 2 N. Y. 269).
In this case the debtor, in August, 1843, had confessed judgment to a creditor who was one of the defendants, on which, in February, 1844, the debtor’s property was sold and bought in by that defendant. In March, 1844, the complainant in the present suit recovered judgment against the debtor upon a demand which existed anterior to the judgment confessed, and then filed the present bill, to set aside the sale, on an allegation that the confession of judgment was fraudulent. The defendant sought to impeach the complainant’s judgment, by showing that it was recovered in an action upon a forged indorsement, and it was insisted for the defendants that, as they were not parties, nor privies to the action against the debtor, the judgment was, at most, prima facie evidence against them. Held, that the judgment was conclusive, both as to the existence of the debt and its amount.
In Rinchey v. Stryker, 28 N. Y. 45, it appeared that the debtor made an assignment for benefit of creditors in November, and in December, plaintiff commenced an action against the debtor, in which he caused the assigned property to be seized on attachment, and he subsequently recovered judgment for the amount of his claim. The present action was brought *324 by a purchaser under the assignment for benefit of creditors, to recover damages from the sheriff for levying on the goods by this attachment. Held, that the judgment recovered in the action against the debtor, although the action was commenced subsequent to the assignment, and the judgment was recovered subsequent both to the assignment and the seizure on attachment, were competent, and, it seems conclusive evidence of the existence of the debt, not only as against the debtor, -but as against one claiming under the general assignment.
A person who is not a party or privy thereto, may collaterally impeach a judgment contravening his rights, whenever it has been obtained by fraud or collusion, or when the court rendering it had no jurisdiction, or when unlawfully entered up. Where a judgment in a personal action, whether rendered on default or after contestation, is not liable to either of these objections, it is conclusive, as to the relation of debtor and creditor between the parties, and the amount of the indebtedness, and it cannot be collaterally impeached by third parties in a subsequent suit, when such relation and indebtedness are called in question (Sidensparker v. Sidensparker, 52 Me. 481).
In that case defendant claimed land, as a grantee of the debtor, by a deed ma.de in 1852. The plaintiff claimed under an execution issued on judgments, recovered by him in 1856 and 1860 against the debtor, on a cause of action which accrued before the deed was made. The defendant sought to impeach the judgment on the ground that the jury erred in determining the question of fact. The court held, upon the authority of Candee v. Lord, 2 N. Y. 269, and similar cases, that the question determined by the judgment could not be re-tried.
Even if the judgment be not conclusive, it is to be impeached, if at all, only by something which would *325 have constituted a legal defense in the action in which the judgment was recovered (Furguson v. Kumler, 11 Minn. 104, 110).
A judgment against the trustees in an action brought by or against them is conclusive on creditors, except as against an allegation of fraud or collusion ; and the fact that such judgment was recovered by the concealment, on the part of the party recovering it, of facts which he was not required to disclose, is not fraud within the rule justifying the impeachment of the judgment.* Otherwise, if fraudulent collusion on the part of the trustees were shown (Field v. Flanders, 40 Ill. 470).
It seems that if an action is pending when an assignment is made, the judgment subsequently recovered in the action will be conclusive against the assignee and the creditors, except that it may be impeached for fraud, or by showing that a full defense was not made, and producing new proof showing that the debt was not due (Garland v. Rives, 4 Rand. 282, 316).
Upon an accounting and distribution of the funds of an assigned estate, a judgment recovered by a creditor against the assignor, establishing a debt existing previous to the assignment, is prima facie evidence, and it seems conclusive in the absence of fraud or collusion (Strong, J., Pittsburg & Steubenville R. R. Co.’s appeal, 3 Grant [Penn.] 68).
The judgment would not be conclusive against an allegation of fraud, but it is conclusive as against any defense which is purely personal to the debtor, and which he failed to set up (Jenness v. Berry, 17 N. H. 549, 556).
The judgment would not be conclusive against an allegation tjiat the creditor wrongfully entered it by default for double the amount justly due him (Sargent v. Salmond, 27 Me. 541).
*326 It may also be observed that if this were a creditor’s action, founded upon the judgment, and seeking to set aside the assignment on an allegation of fraud, the judgment, though recovered after the transfer, would be competent and sufficient evidence against the assignee and those claiming under the assignment, as well as against the assignor; and, although not conclusive, in the strict sense, because, to a certain extent, the assignee may inquire into the grounds of the judgment, it would be conclusive as against the objections here raised, because the assignee and those claiming under the assignment would have no right to re-try an issue which had been litigated and determined between the parties in accordance with the forms and principles of law, and without fraud or collusion (Bump on Fraudulent Conveyances, 559).
I conclude that this judgment against the assignor is conclusive for the purpose of this application.
2. The pendency of an appeal from the judgment does not affect its conclusive character (Harris v. Hammond, 18 How. Pr. 123; Tyler v. Willis, 35 Barb. 213; S. C., 13 Abb. Pr. 369; Sage v. Harpending, 49 Barb. 166; S. C., 34 How. Pr. 1).
3. The question whether the judgment, being in an action against partners, established a debt which was entitled to a dividend out of the separate estate of the assignor, has been carefully considered.
The debt by virtue of which the petitioner is entitled to a dividend is not the judgment, for that came into existence since the assignment. The judgment is relevant here only as evidence, that at the date of the assignment, the assignor was indebted to the petitioner, and therefore, that he is witnin the terms of the assignment, and the covenant of the assignee.
It appears by the evidence given on the trial of the action, the truth of which was reaffirmed by the assignor on his examination in this proceeding, that *327 the original indebtedness was an individual note of the assignor, for which the assignor or his firm gave to the petitioner, in lieu thereof, the firm note. That the assignor paid about half of the firm note, on an arrangement with the petitioner, that he was to be released from the other half, and the question on which the litigation turned was as to the validity of this release. The court held it void, and laid down the rule, that “ the substitution of one note for another extends merely the time of payment, but does not work payment; neither does it extinguish the original liability.” The “case and exceptions” also indicate that the verdict was against “the defendant,” and it nowhere appears that the liability of the copartner was affirmed or established in the action, nor that the judgment was such as would bind the partnership property. I therefore conclude that it is evidence of an individual indebtedness, such as would be entitled to a dividend.
YII. Is the assignee exonerated from the obligation to account, by the compromise and transfer of assets, made under the circumstances found ?
[Observations disposing of a minor objection to evidence are here omitted.]
There is no question, that a settlement and division of the estate, by an assignee in trust for the benefit of creditors, made with the assent of all the parties in interest, is just as effective as if made by a formal decree of a court possessing competent jurisdiction (Estate of Latimer, 2 Ashm. [Penn.] 520), except that the voluntary settlement must be proved in detail, by the trustee relying on it, while the judgment is conclusive evidence of it.
If there is a complete voluntary settlement with part of the creditors and a surplus left and paid over to the assignor, the omitted creditor may maintain assumpsit against the assignee, after demand (Pitch *328 v. Workman, 9 Metc. [Mass.] 517; Frost v. Gage, 1 Allen, 262); so, also, if the assignee has, or is accountable for, a balance justly due to the creditor, and to him alone (Simpson v. Gowdy, 19 Ind. 292).
The petitioner’s claim is not impaired by the fact that there was no schedule of creditors, and no mention of the petitioner in the assignment (Turner v. Jaycox, 40 N. Y. 470); nor by the fact that there is no evidence the petitioner knew of the assignment (Seaman v. Hasbronck, 35 Barb. 151; Norton v. Mallory, 1 Hun, 499, affi’d in 68 N. Y. 434).
The inquiry whether the assignee is liable to account to an omitted creditor, notwithstanding the compromise, involves the question, is a creditor bound to take notice of the assignment, and present his claim to the assignee at the peril of being cut off, or is the assignee bound to ascertain all the debts due from the assignor, and embraced within the terms of the assignment, at the peril of liability for claims overlooked, because unknown ?
The rule applicable to trusts in general, that a trustee having funds to distribute to other persons must see that the money reaches the hand entitled to receive it, and, if he makes a mistake in the person to whom he pays the money, he is still liable to pay it to the proper person (2 Perry on Trusts, 561, § 926), is doubtless one of the most useful responsibilities of trustees, and the existence of this responsibility lies at the foundation of the necessity and advantage of trusts ; but this rule is not to be applied too stringently against assignees for benefit of creditors. Under our law, such an assignee is chargeable with the care and diligence of a provident owner, and liable for a loss by ordinary negligence (Litchfield n. White, 7 N. Y. 438, affi’g 3 Sandf. 545).
It cannot be expected from trustees that they are to act upon principles different from those which ac *329 tuate cautious and prudent men in the transaction of their own affairs (Higgins v. Whitson, 20 Barb. 141).
In, respect to losses, the general rule is to require only good faith, and the same prudence and discretion that a prudent man is accustomed to exercise in the management of his own affairs. Exercise of reasonable care and prudence, and with the best judgment the trustee can form upon the question, is enough (Davis v. Harman, 21 Gratt. 200, and cases cited).
In case of an assignment in trust for a creditor, and improvements made in good faith, Chancellor Kent, on the other hand, said: “It must be, and always has been, the anxious wish of a Court of Chancery, to save a trustee from harm while acting in good faith; but a mis-application of the trust property, by going out of the trust, can never be permitted to injure the cestui que trust, without his assent” (Green v. Witner, 1 Johns. Ch. 26, 40).*
In Prosser v. Masten, not reported, but cited in 20 N. Y. 17 to 19, it was held by the chancellor that assignees for benefit of creditors, who re-conveyed an alleged surplus to the assignor, were liable to an omitted creditor, but not beyond the value of the assets so'conveyed at the time of such conveyance, unless it were shown that they had wasted or misapplied the assets.
It does not appear whether they had notice of the plaintiff’s claim.
Such a conveyance of lands was held in Briggs v. Davis, 20 N. Y. 15, to be void under 1 R. S. 730, section 65, as in contravention of the trust.
But the general principles applicable to trustees have not sufficed to determine in a satisfactory manner the duty and liability of assignees in respect to inquiry for claims, and payments made in ignorance of claims ; *330 and a great diversity of opinion prevailed in cases arising prior to the statute.
The cases bearing on the point are as follows :
Where a creditor, having two demands identical in amount, one being in the preferred list, and the other in the second class, had notice of the assignment, but made no application to the assignees, and the assignees in good faith under mistaken information that there was but one debt, and that not preferred, distributed the assets to other preferred creditors, — Held, that the creditor was negligent, and could not hold the assignees liable (Clark v. Craig, 29 Mich. 398).
In Ward v. Tingley, Yice-Chancellor Sandfobd said: “If there were no directions as to the mode of ascertaining the outstanding demands against the assignor, the assignee would become informed, first, by the application of the respective creditors, and if that were not likely to inform him fully, by an advertisement in the newspapers. The latter would be discretionary ; and if he should omit it, and after a reasonable time, should proceed to divide the assets in his hands among such creditors as had come to his knowledge, his duty would be discharged, and the only relief remaining for a creditor, who had been overlooked, would be to receive his demand out of any future assets that might be received by the assignee.
Any fraudulent concealment of the existence of an assignment from the creditor, or any other violation of trust in the matter, would of course entitle him to a more efficient remedy” (Ward v. Tingley, 4 Sandf. Ch. 476, 479).
In Allmand v. Russell, Ruffin, Ch. J., said: “It may be taken that a trustee is bound to inquire for the debts made payable out of the fund. But it must be enough for him in the first instance, to inquire for them according to the description given in the deed. If he finds none such he may properly conclude, for any *331 thing that can be learnt from the deed, that the debt mentioned has been paid by the debtor himself or had never existed, and was mentioned by mistake.” Hence where a debt was erroneously described by mentioning a surety’s name, when there was no surety, and the trustee in good faith divided the fund among other creditors, — Held, that he was not liable, the creditor not having given him notice (Allmand v. Russell, 5 Ired. 183).
On a question of interest during delay in payment of a dividend, under the New Jersey statute, the court say that the statute does not require the assignee to give notice to the creditors, but the creditors must apply to the assignee (Tomlinson v. Smallwood, 15 N. J. Eq. 286, 288).
The assignor’s books, on proof .that the creditor had constant access and made entries therein, are competent in favor of the representative of the assignor, and against such creditor, as to the amount of his demand entered therein (Griffin v. Macaulay, 7 Gratt. [ Va.] 476, 500).
Where there are no schedules of non-preferred creditors, all are entitled to come in, and ‘ ‘ in all cases of this nature a reasonable time must be allowed for creditors to come in under any assignment” (Story, J.,in Halsey v. Whitney, 4 Mas. 206, 225).
In an action on the assignee’s bond, to distribute proceeds ratably among such creditors of the donor as had executed an agreement for a release, a plea of performance by payment to certain such creditors, and that the other creditors, if any, who signed the agreement, did not accept and prove their claims, is bad for not averring that the assignees had been ready and willing to receive the claims of others, and that notice of time and place of meeting for the purpose had been duly given (Morrill v. Richardson, 9 Pick. 84).
Assignees are held liable for payment to the wrong *332 claimants, in exclusion of those entitled, although by honest misapprehension of duty, or mistaken construction of the assignment (Ward v. Lewis, 4 Pick. 518).
It is not a defense for an assignee, who had funds sufficient to pay the preferred creditors, that he has paid the funds to other creditors, by’mistake, to the prejudice of a claim of which he had notice (New England Bank v. Lewis, 8 Pick. 113).
Where an assignment provides for ratable payment to such creditors as shall, within a specified time, accept its provisions, a creditor, who, from want of notice, mistake, &c., is unable to comply with the terms within the time limited, may be admitted to his share of the fund, if in a reasonable time he signifies that such is his desire, and if he has done nothing inconsistent with an acceptance of the provision made in his favor. Those who have notice and neglect or refuse, must be deemed to reject the offer (De Caters v. De Chaumont, 2 Paige, 490).
The assignee cannot claim to be exonerated, on accounting to one creditor, on the ground that he has over-paid other creditors, nor can he claim to be subrogated (Keim’s appeal, 27 Pa. St. 42).
Recording an assignment in trust for the payment of creditors in another county than their residence, and where there is no real estate to be affected by it, will not be notice to any one of the assignment (Van Nest v. Yoe, 1 Sandf. Ch. 4, 15).
In Reed v. Allerton, 3 Robt. 551, it was held that the order of the supreme court discharging an assignee on petition on a compromise made, and directing him to surrender the assets to the assignor, protected the assignee in a collateral action, especially where the assets were primarily applicable to partnership debts and insufficient for that purpose, and the plaintiff was an individual creditor. Barbour, J., dissenting, was of opinion that the surrender and discharge *333 did not exonerate the assignee as to a creditor who had a right to claim after the compounding creditors were satisfied, and who was not a party to the petition.
In this uncertainty in regard to the common law and equitable liability of the trustee, the act of 1860 and its amendments, and revision in 1877, have, I think, introduced rules which clearly define the power and correlative liability of the trustee. The statute under which the present assignment was made (L. 1866, c. 348, § 2) as amended by subd. 8 and 9, added by L. 1874, c. 600 (Keiley, 13), authorizes the court, in the case the debtors fail to make schedules, to compel them to make discovery;* and authorizes the assignee to take an order to advertise, requiring creditors to present their claims within a limited period, and with a provision that “the assignee or assignees of such debtor or debtors shall, by the order or decree of the said county judge, made on the final accounting of such assignee, be protected against any claim or demand not presented in compliance with such notice before such accounting shall be had.” These provisions are substantially contained in the act of 1877.
Under section 4 of L. 1875, c. 56, as well as under the previous forms in which that section appear (Keiley, 16, 9, 5), the assignee practically has one year from the date of the assignment within which to proceed in the settlement of the estate and the collection of assets, &c.,' before he can be required to make any payment.
Under these clauses it is the duty of the assignee to take the steps prescribed by the'statute, — at least that of advertising for claims, — if he desires to be protected in making payments or any other disposition of the assets among creditors before the lapse of the year.
This view is confirmed by reference to the rule ap *334 plicable under the similar statute as to executors and administrators.
The advertisement for claims protects the executor, if he distributes the assets in good faith after the notice has expired, among claims presented ; but if he pays before, it is at his own risk and he should suffer rather than an innocent creditor (Clayton v. Wardell, 2 Bradf. 7.)
I am therefore of opinion that the assignee’s ignorance of .the existence of the petitioner’s claim does not, in the absence of any evidence that he advertised for claims, or has had an accounting under the statute, exonerate him from the obligation to account to the petitioner.
The questions suggested by the counsel for the assignee as to the proportion or percentage paid upon the compromise is not material to the present application, but is one to be considered upon the accounting if the court should order it.
I conclude that the petitioner is entitled to an order for an accounting, as prayed for in the petition.
No appeal was taken.

 It is a yet unsettled question whether record is essential to the validity and effectiveness of an assignment under this act, or whether acknowledgment and delivery is enough.

 Determined, in same way as above, in Matter of Farnum, 14 Hun, 159, since reported.

 See also Stilwell v. Carpenter, 2 Abb. New Cas. 238.

 Compare further Franklin v. Osgood, 14 Johns. 337; affi’g 2 Johns. Ch. 1; Hext v. Porcher, 1 Strobh. Eq.

 See Matter of Strauss, 1 Abb. New. Cas. 402; Ingraham v. Coxe Ashm. 38.